UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BARRY DEMUS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-112-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NATIONWIDE PROPERTY AND | ) | **MEMORANDUM OPINION** |
| CASUALTY INSURANCE | ) | **AND ORDER** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Nationwide Property and Casualty Insurance Company's ("Nationwide") motion for summary judgment. [Record No. 16]  For the reasons outlined below, Nationwide's motion will be granted.

**I.**

On December 3, 2013, Plaintiff Barry Demus was involved in an automobile accident that damaged his 2003 Dodge Ram truck.  [Record No. 1-1, p. 8; Record No. 16-1, p. 2]  The accident was caused by Gene Relford whose vehicle was insured by Nationwide.  *Id.*  On December 5, 2013, a Nationwide representative contacted Demus about the accident.  [Record No. 35-10, p. 5]  Eleven days later, Nationwide representative, Bret Grier, recorded the pre-accident

value of the Dodge Ram and Nationwide's settlement offer in the company's claim log. *Id.* at 4. Nationwide estimated the vehicle's pre-accident value as $6,347.00, plus $380.82 in taxes. [Record No. 16-8] The salvage estimate obtained by Nationwide valued the vehicle at $1,285.41. [Record No. 16-11] According to Nationwide's appraisal, repairing the damage from the accident would cost $3,941.58. [Record No. 16-7] A separate appraisal estimated that the cost of repairing pre-accident damage to the truck would be $1,819.10. [Record No. 16-6] Instead of paying $3,941.58 to repair the vehicle, Nationwide offered to salvage it. [Record No. 35-10, p. 4] Because Demus wanted to retain the vehicle, Nationwide would pay him the value of his truck pre-accident plus tax and $25.00 for the title fee less the truck's salvage value for a total of $5,467.41. *Id.* Further, Nationwide explained that it would not issue a settlement check until Demus obtained a salvage title which required satisfaction of all liens on the vehicle. *Id.*

Demus told the Nationwide representative that Auto Select of Lexington, LLC ("Auto Select") had a lien on the vehicle. *Id.* On December 16, 2015, the same day Grier recorded the estimates and settlement offer, Grier attempted to contact Mona Shalash, Auto Select's owner, to determine the balance of the lien. *Id.* With its motion for summary judgment, Nationwide submitted an e-mail from Auto Select to Grier dated December 17, 2013, which simply states, "Bret, The 10 day pay off on the Dodge that Barry Demus has a claim on is $2,949.68. Thank

you, Auto Select of Lexington LLC." [Record No. 16-9]  On December 19, 2013, Grier sent Demus a check via next day mail made payable to "Auto-Select of Lexington LLC and Barry Demus" for $2,949.68 to pay-off the lien.  [Record No. 35-10, p. 3]  According to the Complaint, Demus refused to endorse the check to Auto Select because he believed he owed less on the lien than the amount of the check. [Record No. 1-1, p. 8]

Demus also claims that he told Nationwide that Shalash was untrustworthy and that he had paperwork showing that he no longer owed anything on the lien. *Id.*  However, Demus asserts that Nationwide issued the check without asking to examine the paperwork.  The following day (December 20, 2015), Nationwide sent another check via next day mail to Auto Select made out exclusively to "Auto Select of Lexington LLC" for $2,949.68.  [Record No. 35-10, p. 3; Record No. 35-9]

On December 31, 2013, Grier contacted Demus to confirm he was still planning to keep the vehicle.  [Record No. 35-10, p. 3]  In his Complaint, Demus admits that Auto Select eventually released the lien but failed to do so promptly. [Record No. 1-1, p. 9]  On January 29, 2014, Demus advised Grier he planned to go to the Kentucky Department of Motor Vehicles the next day to get a salvage title and would then fax proof of that value to Nationwide.  [Record No. 35-10, p. 3]

Demus did obtain the salvage title on January 30, 2014. [Record No. 16-14] Thereafter, on February 3, 2014, Grier sent Demus a check via next day mail for $2,517.73, which represented the amount of the original settlement offer, reduced by the amount Nationwide paid to satisfy Demus' lien. [Record No. 35-10, p. 3; Record No. 16-13]

On December 16, 2014, Demus filed this action in the Fayette Circuit Court. [Record No. 1-1] In his Complaint, Demus alleges that Nationwide violated Kentucky's Unfair Claims Settlement Practices Act ("UCSPA") through its actions. *Id.* at 9-10. Specifically, he contends that Nationwide "did not attempt in good faith to effectuate a prompt, fair and equitable settlement of Mr. Demus's claim." *Id.* at 9. The plaintiff also asserts that Nationwide failed to "make a reasonable investigation before refusing to pay loss amounts to [him]." *Id.* According to the Complaint, Nationwide "failed to maintain the effective procedures and resources to deter and investigate suspected fraudulent insurance acts . . . or failed to use them despite Mr. Demus's express warnings about Auto Select's baseless assertions." *Id.* at 9-10. Finally, Demus claims that Nationwide violated the UCSPA by engaging "in unfair or deceptive conduct." *Id.* at 10.

Demus seeks damages for Nationwide's underpayment of his claim and pre-judgment interest under K.R.S. § 304.12-235. *Id.* at 9. Specifically, he believes that he was entitled to the total value of his truck. *Id.* Therefore, he estimates that

-4-

Nationwide owes him $2,950.00 (rounded up from the $2,949.68 that Nationwide paid Auto Select) plus $1,200.00 (rounded down from the $1,285.41 Nationwide deducted from his settlement for his vehicle's salvage value). [Record No. 35-1, p. 5] Demus also alleges over $7,000 in related compensatory damages. *Id.* Further, Demus seeks costs, "including a reasonable attorneys [sic] fee" and $114,061.14 in punitive damages. [Record No. 1-1, p. 11; Record No. 35-1, p. 6]

On April 28, 2015, Nationwide removed the action to this Court based on diversity jurisdiction. [Record No. 1] Thereafter, Nationwide filed this motion for summary judgment. [Record No. 16] After much delay, the motion has been fully briefed.

## II.

To obtain summary judgment, a movant must demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). "A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao*, 285 F.3d at 424 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether summary judgment is appropriate, the Court must view all the facts and draw all inferences from the

evidence in a light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.    Kentucky's Unfair Claims Settlement Practices Act ("UCSPA")

Nationwide argues that summary judgment is appropriate on all claims under Kentucky's Unfair Claims Settlement Practices Act because it handled the plaintiff's insurance claim reasonably.  [Record No. 16-1, p. 14]  At the very least, Nationwide asserts that its conduct was not sufficiently egregious to meet the high standard for bad faith claims under the UCSPA.  *Id.*

The UCSPA generally prohibits unfair competition and "unfair or deceptive act[s] or practice[s] in the business of insurance."  K.R.S. § 304.12-010.  Kentucky Revised Statutes § 304.12-230 prohibits seventeen specific unfair practices. Demus' complaint appears to accuse Nationwide of violating the following subsections:

> (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> (7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

K.R.S. § 304.12-230.

The Supreme Court of Kentucky has determined that claimants may maintain a private right of action against an insurer for violation of the UCSPA. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). The *Reeder* Court also held that the UCSPA should be "liberally construed so as to effectuate its purpose" of protecting the public from unfair trade practices and fraud. *Id.* However, a claimant "must meet a high threshold standard" to maintain a claim under the UCSPA. *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012). First, the claimant must make an initial showing that the insurer's conduct was sufficiently "outrageous" to warrant an award of punitive damages. *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003). In other words, the insurer's conduct must amount to "intentional misconduct" or "reckless disregard" of the claimant's rights. *Id.*

"Evidence of mere negligence or failure to pay a claim in [a] timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown." *Id.* After making the initial showing, the claimant must further meet the following three elements of a bad faith claim:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted

> with reckless disregard for whether such a basis existed. . . . [A]n
> insurer is . . . entitled to challenge a claim and litigate it if the claim is
> debatable on the law or the facts.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (internal quotation marks and citation omitted). *See Phelps*, 736 F.3d at 703. When deciding a motion for summary judgment, "[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 376 (Ky. 2000).

Before addressing Demus' individual claims under the UCSPA, the Court will first address the two issues underlying those claims. First, Demus asserts that Nationwide acted unreasonably in its valuation of his claim. In particular, Demus states in his response that, "Nationwide improperly 'totaled' his vehicle and charged Mr. Demus for 'retaining' it." [Record No. 35, p. 9] Second, Demus argues that Nationwide's payment of $2,949.68 to Auto Select constituted unreasonable conduct. *Id.* at 3.

### 1.   Nationwide's Valuation

Kentucky law provides that the owner of a motor vehicle *shall* obtain a salvage title for his vehicle if:

> [the] vehicle has been wrecked, destroyed, or damaged, to the extent
> that the total estimated or actual cost of parts and labor to rebuild or

-8-

> reconstruct the vehicle to its preaccident condition and for legal operation on the roads or highways, not including the cost of parts and labor to reinstall a deployed airbag system, exceeds seventy-five percent (75%) of the retail value of the vehicle, as set forth in a current edition of the National Automobile Dealer's Association price guide.

K.R.S. § 186A.520(1)(a).  If damage to a vehicle meets or exceeds seventy-five percent of its value and the owner retains the vehicle, the insurer is statutorily required to withhold payment on a damage claim until it receives proof that the owner has obtained a salvage title.  K.R.S. § 186A.530(7)(b).

Nationwide asserts that the total damage to the vehicle exceeded ninety percent of its retail value, statutorily requiring Demus to obtain a salvage title. [Record No. 16-1, p. 7]  Nationwide reached that figure by adding $3,941.58, the cost to repair the damage resulting from the subject accident, and $1,819.10, the cost to repair the pre-accident damage to the vehicle.  *Id.* at 6.  Nationwide then divided that figure by the truck's appraised pre-accident value of $6,347.00.  *Id.* at 7.

Conversely, Demus asserts that the proper calculus per the statute is the cost to repair the vehicle to its pre-accident condition divided by the vehicle's total value.  [Record No. 35, p. 9]  Applying that formula, the damage to the vehicle ($3,941.58) only represented sixty-two percent of the vehicle's total value ($6,347.00).  *Id.*  For support, Demus observes that the claims log contains the following notation:  "REPAIR ESTIMATE $3,941.58 @ 62% CCC

VALUATION."   [Record No. 35-10, p. 4]   The statute defining salvage does specify that the calculation should be based on the cost of restoring the vehicle to its "preaccident condition," not "perfect condition."  *See* K.R.S. § 186A.520(1)(a). Additionally, the appraisal determining the truck's pre-accident retail value specifically accounted for the pre-accident damage.  [Record No. 16-8, p. 8]

Nevertheless, the statute only provides that a salvage title *must* be obtained for a vehicle meeting those specifications.  *See* K.R.S. § 186A.520(1).  Demus has not provided the Court with any evidence that a motor vehicle that falls below the seventy-five percent threshold is ineligible for a salvage title.   Therefore, Nationwide's offer to salvage the vehicle was not unreasonable, especially where the damage to the vehicle was still a large percentage of its total value, if not seventy-five percent.

Additionally, Nationwide's offer to pay Demus the pre-accident value of his vehicle less its salvage value cannot be fairly characterized as malicious or outrageous, especially in light of the alternatives.  The regulations that implement the UCSPA state,

> The measure of damages in a third-party motor vehicle loss shall be the difference between the fair market value of the motor vehicle immediately before and after the loss, proportioned by the third party's contributory negligence, if any.   Repair estimates or appraisers' reports may be used to indicate the difference in fair market value.

806 Ky. Admin. Regs. 12:095, Section 7 (d)(2).  Nationwide could have easily complied with the regulations by offering Demus $3,941.58, the cost to repair the vehicle, instead of $5,467.41. Demus now contends that he would have preferred the $3,941.58 because he received less than that amount after Nationwide paid Auto Select.  [Record No. 35, p. 10]  Further, Demus argues that obtaining a salvage title left him with a vehicle that "cannot be registered to operate on the highways." [Record No. 35, p. 10]

The fact that the pay-off to Auto Select reduced Demus' total settlement does not demonstrate that Nationwide engaged in intentional misconduct or that the company recklessly disregarded his rights.  Nationwide gained nothing by paying part of the original settlement offer to Auto Select instead of Demus.  There is also no evidence that Nationwide was even aware of the amount owed to Auto Select prior to making its initial offer to Demus.  Instead, the evidence suggests that Nationwide premised its initial offer on giving Demus the maximum value for his severely-damaged vehicle.

Further, Demus' statement that his vehicle "cannot be registered to operate on the highways" is incorrect.  K.R.S. § 186A.530(2) explains the procedure whereby an owner with a salvage title may obtain a new title after the vehicle is repaired.  Demus provided proof that he did in fact repair the vehicle and obtain a new title.  [Record No. 35-4]  Additionally, he now seeks damages from

Nationwide for the cost of re-titling the vehicle.  [Record No. 35-1, p. 5; Record No. 35-3, pp. 9-11]

In short, even after drawing all inferences in Demus' favor, the evidence presented here does not support the plaintiff's contention that Nationwide's initial offer was unreasonable.  Even if the offer did not fully compensate Demus for the damages he alleges, he has not pointed to evidence demonstrating that Nationwide's conduct was outrageous.  The Supreme Court of Kentucky has held that the UCSPA does not necessarily require that the insurer's proposed settlement "always provide wholly accurate or complete compensation for an injury.  Instead, the statute only requires that an insurer make a good faith attempt to settle any claim, for which liability is beyond dispute, for a reasonable amount."  *Coomer v. Phelps*, 172 S.W.3d 389, 395 (Ky. 2005).  In this case, Nationwide made an offer in good faith and for a reasonable amount, entitling it to summary judgment on this issue.

## 2.   Nationwide's Payment to Auto Select

Demus contends that Nationwide acted unreasonably by paying Auto Select $2,949.68 for release of the lien.  [Record No. 35, pp. 3-8]  He states that Nationwide's records do not support the amount of the check or Nationwide's issuance of the check solely to Auto Select.  *Id.* at 3-7.  Demus also finds fault with Nationwide's failure to secure the lien's release in writing.  *Id.* at 7-8.  However,

the plaintiff fails to cite any authority that would convert these factual contentions to legal claims.

Demus appears to base his allegations on K.R.S. § 304.12-230(4), which obligates insurers to conduct reasonable investigations before refusing to pay claims.  However, in its motion for summary judgment, Nationwide cites to *Wittmer*, 864 S.W.2d at 891-92, where the Supreme Court of Kentucky held that,

> [a]lthough an insurer is under a duty to promptly investigate and pay claims where it has no reasonable grounds to resist in good faith, neither this duty nor any provision of the UCSPA requires the insurer to assume responsibility to investigate the amount of the claimant's loss for the claimant.

Accordingly, Nationwide argues that its "legal responsibility [was] limited to payment upon proof of loss." [Record No. 16-1, p. 9]  And once Grier received the e-mail from Auto Select stating the pay-off amount, Nationwide properly made payment.

Demus counters that *Wittmer* is distinguishable because that case involved the investigation of a third-party claimant's damages, not her lien amount.  [Record No. 35, p. 4, fn. 8]  While *Wittmer* did involve a dispute over damages and not a lien, its reasoning also applies to the circumstances presented here.  Subsection four of K.R.S. § 304.12-230 simply requires insurers "to promptly investigate and pay claims where it has no reasonable grounds to resist in good faith." *Wittmer* at 391-92.  Just as that duty does not further obligate the insurer to investigate the

claimant's loss for him, it also does not mention any legal obligation to investigate the claimant's lien on his behalf.  The fact that Demus communicated that he owed less and that Auto Select was untrustworthy did not legally obligate Nationwide to conduct further investigation.

Even if Nationwide would have investigated and gained access to the evidence Demus now cites, the precise amount of the lien might still have remained uncertain.  Demus claims that the Auto Select representative who sold him the car devised a deal whereby he would first pay the down payment and then the balance of the purchase price over a 24-month period without interest.  [Record No. 35-1, p. 10]  From December 2011 to December 2013, Demus claims that he paid $8,780 in installments plus the $3,900 down payment for a total of $12,680.00.[1]  [Record No. 1-1]  However, the December 4, 2011, Retail Purchase Agreement and attached Retail Installment Contract and Security Agreement signed by Demus and a representative of Auto Select indicate that the total price of the truck was $15,328.70.  [Record No. 16-4]  Further, the agreement specifically provides that interest will accrue at a 24.99 annual percentage rate.  *Id.*

Demus now claims that Auto Select fraudulently manufactured these documents.  [Record No. 35, p. 4, fn. 7]  But the fact remains that even a thorough

---

[1]      Demus has also provided a payment schedule showing $12,680.00 in payments from December 4, 2011 to November 24, 2013.  [Record No. 35-3]

investigation might not have established a definitive pay-off amount.[2]   Certainly,
the UCSPA did not obligate Nationwide to insert itself in such a contentious
dispute over a loan agreement to which it was not a party.  Such a requirement
would undoubtedly have delayed Nationwide's settlement with Demus for much
longer, undermining another purpose of the UCSPA; that is, the prompt settlement
of insurance claims.  K.R.S. § 304.12-230(6).  Because Nationwide had no duty to
investigate the amount of Auto Select's lien, its decision not to do so was neither
unreasonable nor outrageous.

### 3.     Individual UCSPA Claims

Demus claims that Nationwide "engaged in unfair or deceptive conduct in
the business of insurance," generally invoking the UCSPA.  *See* K.R.S. § 304.12-
010.  Demus also asserts a number of individual UCSPA violations, but the facts
he alleges are immaterial to his legal claims.  There is no dispute as to any *material*
facts, and Nationwide is entitled to summary judgment on each of the plaintiff's
claims.

Demus first accuses Nationwide of "not attempting in good faith to
effectuate a prompt, fair and equitable settlement of his claim," in violation of

---

[2]      As proof of Auto Select's "untrustworthiness," Demus submitted a copy of a plea
agreement filed in a criminal action in this court.  [Record No. 35-12]  The plea agreement
shows that Auto Select pled guilty in 2012 to structuring transactions to evade reporting
requirements in violation of 31 U.S.C. § 5324.  *Id.*  But Demus fails to establish that
Nationwide had any legal duty to discover this information.  Even if Nationwide did have
actual knowledge of Auto Select's criminal history, that information would not have nullified
Demus' duties under a valid contract.

K.R.S. § 304.12-230(6).  Specifically, he argues that "Nationwide had determined what payment was due on Mr. Demus's loss no later than December 16, 2013, but did not make its payment to him until February 3, 2014.  This spans a period of <u>49 days</u>."  [Record No. 35, p. 8 (footnotes omitted)]  The regulation implementing subsection six advises insurers to "offer any payment due within thirty (30) calendar days of receipt of due proof of loss."  806 Ky. Admin. Regs. 12:095, Section 6 (1)(a).

Nevertheless, the Supreme Court of Kentucky held in *Wittmer*, 864 S.W.2d at 890, that "technical violations" of the UCSPA are not sufficient to establish a bad faith claim under the Act.  Thus, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997).  Therefore, a nineteen-day delay in payment is insufficient, by itself, to maintain a bad faith claim under the UCSPA.

Demus has not provided any proof that Nationwide harassed or deceived him.  Rather, all of the evidence indicates that Auto Select and Demus were primarily responsible for any delay.  On December 16, 2013, the day that Demus claims the thirty-day time limit began to run, Nationwide explained to Demus that salvaging the vehicle required satisfaction of any liens and proof of a salvage title prior to final settlement.  [Record No. 35-10, p. 4]  Nationwide sent Auto Select a

check to satisfy the lien four days later.  *Id.* at 3.  Demus delayed that process by at least a day when he refused to endorse the check that Nationwide initially sent him for the purpose of paying Auto Select.  [Record No. 1-1, p. 8]  From December 20 until January 30, Nationwide waited for Demus to obtain a salvage title.  [Record No. 35-10, p. 3]  Demus attempts to blame this delay on either Nationwide or Auto Select.  Auto Select has not been made a party to this suit, so whatever part it might have played in delaying the release of the lien is immaterial.  As for Nationwide's responsibility, the statute governing salvage titles clearly indicates that the owner of the motor vehicle is responsible for obtaining the salvage certificate in a timely manner.  K.R.S. § 186A.530(7)(b) ("The owner shall apply for a salvage certificate of title within three (3) working days of the agreed settlement.").

Four days after Demus finally received the salvage title, Nationwide sent a settlement check via next day mail.  [Record No. 35-10, p. 3]  Considering all the evidence, the bulk of the delay cannot be fairly attributed to Nationwide.  At the very least, Nationwide's conduct in settling the claim did not involve the deception or harassment necessary for a delay-based UCSPA claim.

Demus also claims that Nationwide violated its duty to conduct a reasonable investigation under subsection four of K.R.S. § 304.12-230.  However, as

discussed above, neither subsection four nor any other provision of the UCSPA impose on insurers a duty to investigate the amount of claimant's lien for him.

Demus further accuses Nationwide of violating its duty under subsection three, requiring it to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies." K.R.S. § 304.12-230(3). Aside from parroting the language of this subsection, Demus offers nothing further in support of this claim. His attorney states in an affidavit filed with Demus' response that Nationwide has not yet produced its written policies, guidelines, and manuals in discovery.[3] [Record No. 35-13, p. 3]

But Demus cannot avoid summary judgment by requesting more time for discovery. Beyond filing an affidavit, the plaintiff is required to explain why he needs additional discovery, what material facts he hopes to uncover, and why he has not previously discovered them. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Demis' counsel asserts that Nationwide's policies, guidelines, and manuals will provide at least "one internal measure" of the reasonableness of Nationwide's conduct. [Record No. 35-13, p. 3] However, Nationwide's conduct speaks for itself.

---

[3]    Counsel notes that Nationwide agreed to submit those documents after execution of a protective order, but production of the documents was delayed when this Court denied the parties' joint motion for an agreed protective order. [Record No. 35-13] Since the filing of its reply, Nationwide has notified the Court that it has provided the plaintiff's counsel with a copy of its "Material Damage Best Practices Manual." [Record No. 41] However, Nationwide's policies are not necessary for the disposition of the defendant's motion.

Nothing in the record indicates that Nationwide acted outrageously in its handling of Demus' claim. Neither Demus nor his attorney have identified anything specific that they hope to obtain through further discovery that might suggest otherwise. Further, the UCSPA "does not require insurers to adopt written manuals." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 586 (6th Cir. 2001). In *Lenning*, the Sixth Circuit found that summary judgment was warranted where the plaintiff failed to identify any procedures that should have been adopted or demonstrate how the insurer's investigation was substantively inadequate. *Id.* The same result follows from the evidence and pleadings in this case. Nationwide is entitled to summary judgment regarding Demus' subsection three claim because the plaintiff has failed to identify any evidence of unreasonable conduct or necessary but unadopted procedures.

According to Demus, "Nationwide has forced [him] to assert claims against it in litigation to recover amounts due to him on the claim." [Record No. 1-1, p. 10] This language is clearly appropriated from K.R.S. § 304.12-230(7) which prohibits insurers from, "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Subsection seven's use of the term "insureds" plainly signifies that it only applies to first-party claimants, not third-party claimants like Demus. *See Meador v. Indiana Ins. Co.*,

-19-

1:05CV-00206-TBR, 2007 WL 1098208 (W.D. Ky. Apr. 12, 2007) (Summary judgment was appropriate where third-party insurance claimants attempted to maintain a bad faith claim based on K.R.S. § 304.12-230(7).)

Finally, Demus claims that he is not only entitled to "the remainder of the total loss on the Truck" but also to prejudgment interest from the date of the accident "as provided in K.R.S. 304.12-235." [Record No. 1-1, p. 9]  Demus also seeks attorney's fees.  *Id.* at 11.  Regarding this claim, K.R.S. § 304.12-235 provides,

> (1) All claims arising under the terms of any contract of insurance shall be paid to the named insured person or health care provider not more than thirty (30) days from the date upon which notice and proof of claim, in the substance and form required by the terms of the policy, are furnished the insurer.

> (2) If an insurer fails to make a good faith attempt to settle a claim within the time prescribed in subsection (1) of this section, the value of the final settlement shall bear interest at the rate of twelve percent (12%) per annum from and after the expiration of the thirty (30) day period.

> (3) If an insurer fails to settle a claim within the time prescribed in subsection (1) of this section and the delay was without reasonable foundation, the insured person or health care provider shall be entitled to be reimbursed for his reasonable attorney's fees incurred. No part of the fee for representing the claimant in connection with this claim shall be charged against benefits otherwise due the claimant.

Again, the statute's use of the word "insured" indicates that the prejudgment interest and attorney's fees available under subsections two and three of § 304.12-235 do not apply to third-party claimants.  The Supreme Court of Kentucky has

held that the statute only applies "to an insurer's negotiations with its own policyholder or the policyholder's health care provider." *Glass*, 996 S.W.2d at 455. Because Demus' insurance claim was based on Relford's policy with Nationwide, not his own, he is not eligible for damages under § 304.12-235. Demus cites to no other authority that would entitle him to similar damages.

## B. OTHER CLAIMS FOR RELIEF

### 1. Right to Refund From Auto Select

Demus also states that he is entitled to damages from Nationwide for "effectively cutting off [his] offset and refund rights against Auto Select." [Record No. 1-1, p. 10] However, he has failed to explain how his dispute with Auto Select translates into a cognizable legal claim against Nationwide.

Kentucky courts have held that a "non-fraudulent settlement or recovery by a mortgagor from a third-party tortfeasor bars a subsequent recovery by a mortgagee against that same tortfeasor for that same act of property damage." *Grafton v. Shields Mini Markets, Inc.*, 346 S.W.3d 306, 312 (Ky. App. 2011). *See also State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626 (Ky. App. 1990). Once the third-party tortfeasor, Nationwide's insured in this case, settles with the mortgagor, Auto Select in this case, the mortgagor "is obligated to hold the resulting proceeds in trust for the mortgagee. As such, the mortgagee is not

without remedy." *Grafton*, 346 S.W.3d at 311.  Accordingly, Demus' remedy for any refund is against Auto Select itself, not Nationwide.

### 2.   Punitive Damages

Demus seeks $114,060.14 from Nationwide for punitive damages.  [Record No. 1-1, p. 11; Record No. 35-1, p. 6]  As explained earlier, maintaining a bad faith claim under the UCSPA requires evidence of misconduct sufficient for an award of punitive damages. *Bult*, 183 S.W.3d at 186.  But as outlined above, Demus cannot establish that Nationwide acted outrageously by engaging in "intentional misconduct" or "recklessly disregarding" his rights.  Therefore, Demus is also not entitled to punitive damages under the facts of this case.

### 3.   Loss of Use

Demus also claims $7,202.50 in damages for time without the use of his truck, including loss to income, loss of time, and inconvenience.  [Record No. 1-1, p. 10; Record No. 35-1, p. 5]  Regarding this claim, K.R.S. § 304.39-115 states,

> Loss of use of a motor vehicle, regardless of the type of use, shall be recognized as an element of damage in any property damage liability claim. Such a claim for loss of use of a motor vehicle shall be limited to reasonable and necessary expenses for the time necessary to repair or replace the motor vehicle.

In his Answers to Nationwide's Interrogatories, Demus itemized his damages for loss of use as follows:

> one hour plus 30 miles each weekday for 10 weeks: $1202.50 = (7.25 + (56¢/mi. x 30 miles)) x 5 days/week x 10 weeks

delivery payments for feed, straw, and other supplies: $500 (est.)

income difference due to disruption to participation in trainer sales in winter months: $5500 (est.)

[Record No. 35-1, p. 5]  The damages Demus lists do not fall within the category of "reasonable and necessary expenses" covered by § 304.39-115.  Demus' gas mileage certainly does not qualify as an expense associated with loss of one's vehicle.  Demus would have to pay for his own gasoline even if he had access to his vehicle.

Further, the statute provides for recovery of "expenses," not lost income or lost time.   The statute's reasonable and necessary requirement presupposes reimbursement for some kind of replacement transportation, like bus fees or the cost of a rental vehicle.   No such expense appears on Demus' list.   In fact, Nationwide's claims log submitted by Demus into the Court's record indicates that Nationwide offered him a rental vehicle but Demus declined.[4]  Demus may not claim any "necessary expenses" for loss of use under § 304.39-115 where Nationwide offered to provide replacement transportation but Demus refused.

### 4.    Time and Resouces Spent on Settlement

Demus claims that "[h]e spent significant amounts of his own time and resources seeking prompt, fair and equitable settlement of his claim, including

---

[4]       Nationwide's agent notes in the entry on December 11, 2013: "Rental Utilized Y or N: NO."  [Record No. 35-10, p. 4]

trying to get Nationwide to address problems with Auto Select's assertions and being required to work with and monitor Auto Select." [Record No. 1-1, p. 10] As damages, Demus claims that he is entitled to $29.00 for additional titling fees and $343.17 for his time, valued by him at $7.25 per hour. [Record No. 35-1, p. 5] Demus does not cite to any authority that would entitle him to damages for time spent working on the claim or even for titling fees.

The plaintiff is not entitled to any damages from Nationwide for time spent negotiating with Auto Select, a non-party. Additionally, Nationwide did include as part of the settlement $25.00 for the title fees associated with attaining a salvage title. [Record No. 35-10, p. 4] Further, the receipts Demus submitted to the Court show he only paid $12.00 on January 30, 2014 for the salvage title. [Record No. 35-3, p. 9] Accordingly, Nationwide is also entitled to summary judgment on this particular claim for damages.

### III.

The plaintiff and his counsel also contend that summary judgment is not appropriate in this case because of outstanding discovery issues beyond the production of Nationwide's written policies, guidelines, and manuals. Demus observes in his response -- as he did in his motion for a second extension of time to respond -- that "the discovery period is open for another two months." [Record No. 35-2.] However, the fact that discovery remains open does not preclude a

party from filing summary judgment.   Rule 56(b) of the Federal Rules of Civil Procedures allows a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery."   Thus, Nationwide was well within its rights to file its motion for summary judgment, and the Court is not required to withhold disposition until the discovery deadline has passed.

To avoid summary judgment based on the need for further discovery, a party must explain the reason more discovery is needed and what material facts he or she hopes further discovery will produce.  *Cacevic*, 226 F.3d at 488.  In her affidavit, Demus' counsel observes that Auto Select has not responded to the subpoena duces tecum served by the plaintiff while the case was still in state court.  [Record No. 35-13, p. 2]  However, counsel does not explain why the documents sought are necessary to the disposition of this motion or even what information she hopes the documents will reveal.  *Id.*  Similarly, counsel states that Nationwide's responses to the plaintiff's discovery requests are incomplete but by way of explanation only states that their incompleteness has "raised issues for further discovery."  *Id.*  More explanation is necessary based on the standard in *Cacevic*.

Counsel also refers to a Certificate of Compliance wherein Nationwide admits that it deleted three pages of requested discovery, Bate Stamp documents 332-334, "based upon Nationwide's good faith operation of its our [sic] records retention program."  [Record No. 35-11]  According to Demus' attorney, "[t]his

now requires inquiry (through written requests or deposition discovery) whether Nationwide and its personnel have engaged in spoliation or other efforts to conceal wrongdoing in the settlement of Plaintiff Demus's claim." [Record No. 35-13, pp. 2-3] But counsel fails to even convey what type of information she fears Nationwide destroyed. Without more, the Court will not delay disposition of summary judgment based on the possibility of future spoliation claims.[5]

Finally, counsel complains that her client, Demus, did not have sufficient time to file an affidavit in support of his response to the motion for summary judgment. [Record No. 35-13, p. 3] She explains that she was waiting on Nationwide's discovery responses before completing this affidavit. *Id.* Counsel states that,

> [n]ot only are those responses not yet complete, but by the end of last week Plaintiff had come down with the flu. He has not sufficiently recovered that it is possible for him to assist in finalizing an affidavit, particularly not in the fewer than 16 hours available following the Court's Virtual Order [DE 34] denying his unopposed motion to postpone further briefing.

*Id.* Counsel did not need all of Nationwide's discovery responses to draft an affidavit on behalf of her client explaining his version of events in response to

---

[5]   Counsel only has proof, provided by Nationwide, that some evidence has been destroyed. That, by itself, leaves the plaintiff far from proving a spoliation claim. Spoliation sanctions require the party seeking them to prove: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. United States Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).

Nationwide's motion for summary judgment.  Counsel had thirty-seven days, not sixteen hours, to prepare a response and an affidavit addressing the merits of Nationwide's motion.  The fact that she assumed that the Court would grant a second extension did not require the Court to do so.  *See Dunning v. War Mem'l Hosp.*, 534 F. App'x. 326, 331 (6th Cir. 2013) (Matters of trial management are in the district court judge's discretion.)  In short, Neither Demus nor his attroney have shown why the Court should further delay addressing the merits of the defendant's motion for summary judgment.

## IV.

Nationwide has established that thear are no genuine issues of material fact in dispute.  Furhter, as outlined herin, it is entitled to judgment in its favor regarding all claims asserted by the plaintiff.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Defendant Nationwide Property and Casualty Insurance Company's motion for summary judgment [Record No. 16] is **GRANTED.**

2.      This action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3.      The pretrial conference, previously scheduled for March 9, 2016, and the trial, previously scheduled for April 12, 2016, are **CANCELED** and **SET ASIDE**.

This 7th day of December, 2015.



Signed By:

*Danny C. Reeves*

United States District Judge